United States District Court
Southern District of Texas

**ENTERED**

September 26, 2016

David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### MCALLEN DIVISION

| | | |
|---|---|---|
| JOSE L CANTU, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 7:14-CV-456 |
| | § | |
| STATE FARM LLOYDS, *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER AND OPINION

There are several motions pending before the Court in this case. First, Jose L. Cantu ("Mr. Cantu") and Diana Cantu ("Mrs. Cantu") (collectively "Plaintiffs") filed a "Motion to Lift Abatement"[1] on September 11, 2015, to which State Farm Lloyds ("State Farm"), Richard Freymann ("Mr. Freymann"), Wesley Swett ("Mr. Swett") and Kristi Cramer ("Ms. Cramer") (collectively "Defendants") filed a response.[2] In turn, Plaintiffs filed a reply.[3] Second, Defendants filed a "Motion to Lift Abatement for the Purpose of Filing a Motion for Summary Judgment"[4] on October 16, 2015, to which Plaintiffs filed a response.[5] Finally, Defendants filed a "Motion for Summary Judgment"[6] on October 16, 2015, to which Plaintiffs filed a response.[7] In turn, Defendants filed a reply,[8] and Plaintiffs subsequently filed a surreply.[9]

---

[1] Dkt. No. 21.
[2] Dkt. No. 23.
[3] Dkt. No. 24.
[4] Dkt. No. 25.
[5] Dkt. No. 27.
[6] Dkt. No. 26.
[7] Dkt. No. 29.
[8] Dkt. No. 31.
[9] Dkt. No. 33

After considering the motions, responses, record, and relevant authorities, the Court **DENIES** Plaintiffs' motion to lift abatement, **GRANTS** Defendants' motion to lift abatement, and **GRANTS** the motion for summary judgment.

## I.  Background

Plaintiffs' claims arise from a wind and hail storm that occurred on or about March 29, 2012, causing damage to their property.[10] On March 30, 2012, Plaintiffs reported an insurance claim to State Farm.[11] Thereafter, State Farm assigned Mr. Swett as the individual adjuster for the claim, and after inspecting the property on May 15, 2012, he estimated the amount of loss to be $9,399.31.[12] State Farm then issued a payment to Plaintiffs in the amount of $6,712.03 after applying depreciation and deductible.[13] On May 7, 2013, Mrs. Cantu called State Farm inquiring as to the date of Plaintiffs' claim.[14] Ms. Cramer spoke with Mrs. Cantu and followed up that day with an email informing her that the claim was reported on March 30, 2012.[15]

On April 16, 2014, Plaintiffs filed suit against Defendants in state court, alleging breach of contract and extra-contractual claims, including violations of the Texas Insurance Code §§ 541 and 542, fraud and conspiracy to commit fraud, and breach of the common law duty of good faith and fair dealing.[16] Subsequently, on June 6, 2014, Defendants removed the case to this Court.[17] Plaintiffs then filed a motion to remand on June 23, 2014,[18] to which Defendants responded.[19] On June 25, 2014, Defendants filed a motion to abate,[20] arguing that abatement was

---

[10] Dkt. No. 1-2, at ¶ 16.
[11] Dkt. No. 26-2, at ¶ 5; Dkt. No. 26-5, at p. 2.
[12] *Id.* at ¶ 6; Dkt. No. 26-4, at p. 3.
[13] Dkt. No. 26-2, at ¶ 6; Dkt. No. 26-4, at p. 3.
[14] Dkt. No. 26-3, p. 2.
[15] Dkt. No. 26-5, at p. 2.
[16] Dkt. No. 1-2, at ¶¶ 38-75.
[17] Dkt. No. 1.
[18] Dkt. No. 2.
[19] Dkt. No. 5.
[20] Dkt. No. 3.

required because Plaintiffs did not provide proper notice of their claims pursuant to Texas Insurance Code § 541.154.[21] After Plaintiffs replied to Defendants' response to the motion to remand,[22] Plaintiffs filed a motion to withdraw the motion to remand on September 11, 2014.[23] Defendants then responded to the motion to withdraw the motion to remand.[24] On October 6, 2014, the Court granted Plaintiffs' motion to withdraw the motion to remand and dismissed then-defendant Mr. Freymann as improperly joined in the suit.[25] On November 17, 2014, the Court granted the motion to abate, and abated the case until sixty days after proper notice was provided.[26]

On February 5, 2015, Plaintiffs demanded appraisal under their insurance policy with State Farm,[27] which provides in relevant part:

> If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, disinterested appraiser. Each shall notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire. The appraisers shall then set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss.[28]

On February 5, 2015, Plaintiffs appointed Shannon Cook as appraiser.[29] Plaintiffs then filed a motion to abate the case pending completion of appraisal on February 9, 2015.[30] On February 11,

---

[21] *Id.* at ¶ 1.
[22] Dkt. No. 6.
[23] Dkt. No. 9.
[24] Dkt. No. 10.
[25] Dkt. No. 11.
[26] Dkt. No. 12.
[27] Dkt. No. 26-6.
[28] Dkt. No. 26-1, at p. 42.
[29] Dkt. No. 26-2, at ¶ 8.
[30] Dkt. No. 13.

2015, the Court denied the motion because neither party had moved to lift the previous abatement granted on November 17, 2014 that resulted from Plaintiffs' failure to satisfy the notice requirement under the Texas Insurance Code.[31] On February 23, 2015, State Farm responded to the appraisal demand and appointed Louis Mayeux as appraiser.[32]

On April 24, 2015, after five months without any filing confirming proper notice pursuant to § 541.154, the Court issued an order requesting that the parties file a status report by May 4, 2015.[33]The parties were ordered to inform the Court of the status of this case, and Plaintiffs were cautioned that failure to demonstrate proof of proper notice in compliance with the Court's previous order would result in dismissal of these proceedings.[34] On May 4, 2015, the parties filed a status report informing the Court that Plaintiffs sent a notice letter to Defendants on February 2, 2015.[35] Subsequently, on May 14, 2015, Plaintiffs filed a motion to lift abatement,[36] to which Defendants responded.[37]

On June 22, 2015, State Farm received the appraisal award signed by appraiser Cook and appraiser Mayeux, which declared a loss of $18,423.11 on a replacement cost basis and $14,932.48 on an actual cash value basis.[38] On June 23, 2015, State Farm issued a payment to Plaintiffs in the amount of $5,896.35 after applying depreciation and deductible.[39] On that same day, without notice of such payment, the Court denied Plaintiffs' motion to abate because even though it found Plaintiffs satisfied the notice requirement, lifting the abatement was unnecessary

[31] Dkt. No. 14.
[32] Dkt. No. 26-2, at ¶ 8.
[33] Dkt. No. 15.
[34] Id.
[35] Dkt. No. 16; Dkt. No. 16-1.
[36] Dkt. No. 17.
[37] Dkt. No. 18.
[38] Dkt. No. 26-8.
[39] Dkt. No. 26-9.

during the ongoing appraisal process.[40] The Court further ordered the parties to file a detailed status report by September 15, 2015.[41] On September 15, 2015, the parties filed a status report confirming completion of the appraisal process and the resulting payment of the appraisal award.[42] The parties explained that Plaintiffs sought to secure additional discovery, while Defendants requested to dismiss the action following payment of the appraisal award.[43]

Following payment of the appraisal award, Plaintiffs filed a motion to lift abatement[44] and a motion for leave to file amended complaint,[45] while Defendants filed a motion to lift abatement[46] and a motion for summary judgment.[47] On September 15, 2016, this Court denied the motion for leave to file amended complaint.[48]

## II.    Summary Judgment Legal Standard

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[49] A fact is "material" if its resolution could affect the outcome of the action,[50] while a "genuine" dispute is present "only if a reasonable jury could return a verdict for the non-movant."[51] As a result, "[o]nly disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment."[52]

---

[40] Dkt. No. 19.
[41] *Id.*
[42] Dkt. No. 22.
[43] *Id.*
[44] Dkt. No. 21.
[45] Dkt. No. 28.
[46] Dkt. 25.
[47] Dkt. No. 26.
[48] Dkt. No. 36.
[49] FED. R. CIV. P. 56(a).
[50] *Burrell v. Dr. Pepper/Seven UP Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007) (internal quotation marks and citation omitted).
[51] *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006) (citation omitted).
[52] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In a motion for summary judgment, the movant bears the initial burden of showing the absence of a genuine issue of material fact.[53] In this showing, "bald assertions of ultimate fact" are insufficient.[54] Absent a sufficient showing, summary judgment is not warranted, the analysis is ended, and the non-movant need not defend the motion.[55] On the other hand, the movant is freed from this initial burden on matters for which the non-movant would bear the burden of proof at trial; in that event, the movant's burden is reduced to merely pointing to the absence of evidence.[56] If the movant meets its initial burden, the non-movant must then demonstrate the existence of a genuine issue of material fact.[57] This demonstration must specifically indicate facts and their significance,[58] and cannot consist solely of "conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation."[59]

In conducting its analysis, the Court considers evidence from the entire record and views that evidence in the light most favorable to the non-movant.[60] Thus, although the Court refrains from determinations of credibility and evidentiary weight, the Court nonetheless gives credence to all evidence favoring the non-movant; on the other hand, regarding evidence that favors the movant, the Court gives credence to evidence that is uncontradicted and unimpeachable, but disregards evidence the jury is not required to believe.[61] Rather than combing through the record on its own, the Court looks to the motion for summary judgment and response to present the evidence for consideration.[62] Parties may cite to any part of the record, or bring evidence in the

---

[53] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[54] *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978) (citation omitted).
[55] *See Celotex Corp.*, 477 U.S. at 323.
[56] *See id.* at 323-25; *see also Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-19 (5th Cir. 1995).
[57] *See id.*
[58] *See Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).
[59] *U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir. 2008) (citing *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)).
[60] *See Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000) (citations omitted).
[61] *See id.*
[62] *See* FED.R.CIV. P. 56(e).

motion and response.[63]  By either method, parties need not proffer evidence in a form admissible at trial,[64] but must proffer evidence substantively admissible at trial.[65]

## III.  Discussion

### a. Motions to Lift Abatement

Both parties request the Court lift the current abatement, albeit for different reasons. Plaintiffs request the Court lift abatement to conduct additional discovery.[66] In turn, Defendants allege in their response to Plaintiffs' motion to lift abatement that further discovery is unnecessary and Defendants are entitled to summary judgment because "payment of the appraisal award disposes of all of Plaintiffs' claims."[67] Defendants request the Court lift abatement "for the sole purpose of allowing the Defendants to file their Motion for Summary Judgment."[68] Plaintiffs respond by arguing that while they "do not oppose[] a lift of the abatement on this case, . . . lifting the abatement for the sole purpose of allowing Defendants[] to file their [motion for summary judgment], prior to allowing any discovery to take place, would be prejudicial to the fair adjudication of Plaintiffs' various causes of action."[69]

Under Federal Rule of Civil Procedure 56(d), if a nonmovant shows by affidavit or declaration, with specificity, why it cannot present facts essential to justify its opposition to a motion for summary judgment, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other

---

[63] See FED. R. CIV. P. 56(c).
[64] See Celotex Corp., 477 U.S. at 324 ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment.").
[65] See Bellard v. Gautreaux, 675 F.3d 454, 460 (5th Cir. 2012) ("the evidence proffered by the plaintiff to satisfy his burden of proof must be competent and admissible at trial.").
[66] Dkt. No. 21, at ¶ 6.
[67] Dkt. No. 23, at ¶ 1.
[68] Dkt. No. 25, at ¶ 3.
[69] Dkt. No. 27, at ¶ 6.

appropriate order.[70] In order to obtain such relief, however, the nonmovant must show "by affidavit or declaration that, *for specified reasons*, it cannot present facts essential to justify its opposition."[71] In this manner, the nonmovant must set forth "how additional discovery will create a genuine issue of material fact."[72] Relief under Rule 56(d) is not warranted if either (1) the proffered basis does not present a reasonable likelihood that further discovery would produce evidence creating a fact issue,[73] or (2) such evidence would not create fact issues for each essential element of the nonmovant's claim.

Here, Plaintiffs assert in their response to Defendants' motion to lift abatement that they have not "had an opportunity to conduct *any* discovery and secure material testimony from Defendants and/or Defendants' fact witnesses, and [that] such discovery and testimony is essential to Plaintiffs' ability to not only fully state their opposition to Defendants' [motion for summary judgment], but to pursue their various causes of action."[74] Moreover, Plaintiffs explain that State Farm has not provided a copy of the claims file.[75] Nevertheless, the Court finds that Plaintiffs have failed to identify any additional discovery likely to create a fact issue as to each essential element. Plaintiffs have failed to explain their basis for believing depositions, written discovery, and a copy of the claim file would create a fact issue on their claims. Instead, they request the power to rummage, which is not the purpose of discovery.

---

[70] *See McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 700 (5th Cir. 2014).

[71] *Id.* (emphasis added).

[72] *Canady v. Bossier Parish Sch. Bd.*, 240 F.3d 437, 448 (5th Cir. 2001) (citing *Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit*, 28 F.3d 1388, 1395 (5th Cir. 1994)).

[73] *Beverly v. Wal-Mart Stores, Inc.*, 428 F.App'x 449, 451 (5th Cir. 2011) ("If it reasonably appears that further discovery would not produce evidence creating a genuine issue of material fact, the district court's preclusion of further discovery prior to entering summary judgment is not an abuse of discretion.") (quoting *Resolution Trust Corp. v. Sharif–Munir–Davidson Dev. Corp.*, 992 F.2d 1398, 1401 (5th Cir. 1993)).

[74] Dkt. No. 27, at ¶ 7.

[75] *Id.*

Plaintiffs demanded appraisal under their insurance policy, and the issued appraisal award determined the amount of loss in this case on June 22, 2015.[76] Thus, the Court will discuss the implications of the appraisal award on the breach of contract claim and extra-contractual claims below. In doing so, the Court will specifically address Plaintiffs' ineffectiveness in creating a fact issue preventing summary judgment. On the basis of the standard discussed above, and the reasons more fully set forth below, the Court **DENIES** the Plaintiffs' motion to lift abatement and **GRANTS** the Defendants' motion to lift abatement.

### b. Breach of Contract Claim

Defendants' argument in favor of summary judgment proceeds sequentially to address the claims for breach of contract before the extra-contractual claims, a rubric which the Court finds helpful for the analysis.

Defendants argue that Plaintiffs are estopped from maintaining a breach of contract claim as a matter of law based on its timely payment of the appraisal award.[77] Because federal jurisdiction is invoked on the basis of diversity of citizenship,[78] this Court, *Erie*-bound, must adhere to grounds of relief authorized by the state law of Texas.[79] Absent a decision by a state's highest tribunal, the decisions by Texas courts of appeals are controlling "unless [the Court] is convinced by other persuasive data that the highest court of the state would decide otherwise."[80]

Indeed, in Texas, "[t]he effect of an appraisal provision is to estop one party from contesting the issue of damages in a suit on the insurance contract, leaving only the question of

---

[76] Dkt. No. 26-2, at ¶ 9; Dkt. No. 26-8.
[77] Dkt. No. 26, at ¶ 1.
[78] Dkt. No. 1, at ¶ 9.
[79] *See Exxon Co. U.S.A., Div. of Exxon Corp. v. Banque De Paris Et Des Pays-Bas*, 889 F.2d 674, 675 (5th Cir. 1989); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).
[80] *Id.* (quoting *West v. AT&T*, 311 U.S. 223, 237 (1940)) (internal quotation marks omitted).

liability for the court."[81] In breach of contract cases where liability derives from an allegation that the insurer wrongfully underpaid a claim, Texas law dictates that the insured is estopped from maintaining a breach of contract claim when the insurer makes a proper payment pursuant to the appraisal clause.[82] Accordingly, in the instant case, Plaintiffs are effectively foreclosed from bringing a breach of contract claim due to Defendants' timely payment, unless Plaintiffs successfully raise an issue of fact on some distinct contractual provision, or if Plaintiffs effectively raise an issue of fact as to the validity of the appraisal process.[83]

Here, Plaintiffs contend that actions committed by State Farm support a breach of contract claim. Plaintiffs cite the "Loss Settlement" policy provision as the contractual provision they claim was breached.[84] Favorably interpreting the allegations in their response to Defendants' motion for summary judgment, Plaintiffs assert that State Farm is in breach of contract for multiple reasons. First, Plaintiffs accuse Defendants of failing to fully and timely pay the actual cash value of the appraisal award.[85] Plaintiffs present their own calculations to demonstrate entitlement to a greater payment based on the appraisal award, but fail to explain how payment was untimely.[86]

Next, Plaintiffs argue Defendants underpaid Plaintiffs' claim since the appraisal process determined an amount of loss "significantly more than the amount estimated by State Farm during the handling of the claim."[87]

---

[81] *Franco v. Slavonic Mut. Fire Ins. Ass'n*, 154 S.W.3d 777, 786 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (citing *Wells v. American States Preferred Ins. Co.*, 919 S.W.2d 679, 683–85 (Tex. App. —Dallas 1996, writ denied)).
[82] *See Blum's Furniture Co. v. Certain Underwriters at Lloyds London*, 459 F.App'x 366, 368 (5th Cir. 2012) (internal quotation marks and citation omitted).
[83] *See Franco*, 154 S.W.3d at 786–87.
[84] Dkt. No. 29, at ¶ 18.
[85] Dkt. No. 29, at ¶¶ 14–15.
[86] Dkt. No. 29, at ¶ 15.
[87] Dkt. No. 29, at ¶ 7.

Plaintiffs additionally argue Defendants failed to timely investigate Plaintiffs' claim.[88] Plaintiffs explain that State Farm was contractually obligated to begin an "investigation of Plaintiffs' claim within fifteen (15) days of the receipt of the claim,"[89] and although Plaintiffs reported their claim on March 30, 2012, Mr. Swett did not investigate the insured home until May 15, 2012.[90]

Finally, Plaintiffs note their policy provides for two years from the date of loss to perform necessary repairs and/or replacements to receive payment for withheld depreciation.[91] Plaintiffs also note that when State Farm paid the appraisal award, it stated Plaintiffs had until October 31, 2015 to complete all repairs and/or replacement of the damaged property to be entitled to replacement cost benefits and withheld depreciation.[92] While Plaintiffs do not clearly articulate an argument, they appear to argue that State Farm is in breach of contract by not providing Plaintiffs two years from payment of the appraisal award to perform necessary repairs and/or replacements.[93]

Regarding Plaintiffs' first argument that State Farm failed to fully and timely pay the actual cash value of the appraisal award, the record shows that Defendants properly deducted prior payments from the appraisal award and that Plaintiffs have not presented any evidence of untimely payment. The appraisal award set the amount of loss at $18,423.11 on a replacement cost basis, and $14,932.48 on an actual cash value basis.[94] Plaintiffs argue that while State Farm tendered an actual cash value payment of $5,896.35, they are entitled to a payment of

---

[88] Dkt. No. 29, at ¶ 8.
[89] Dkt. No. 29, at ¶ 16.
[90] Dkt. No. 29, at ¶ 12. Plaintiffs incorrectly state the year of investigation as 2015.
[91] Dkt. No. 29, at ¶ 17.
[92] Id.
[93] Id. ("[N]ow Plaintiffs need to complete all repairs before October 31, 2015 – a little more than four months after a portion of the appraisal award was paid by State Farm – in order to receive payment for the depreciation.").
[94] Dkt. No. 26-8.

$7,498.45.[95] The value difference arises from Plaintiffs' miscalculation of previous payments made by State Farm. Plaintiffs only deduct $6,712.03 for previous payments[96] and failed to include a previous "Coverage B—Personal Property" damage payment of $1,602.10.[97] That omission explains why Plaintiffs' calculation is $1,602.10 greater than the amount tendered by State Farm. Thus, Plaintiffs' argument fails because the prior payments were properly deducted from the appraisal award.

The Court is additionally unpersuaded by Plaintiffs' second argument that the appraisal award shows State Farm breached the contractual agreement by failing to properly estimate the amount of damages. The Court notes that contrary to Plaintiffs' assertions, Texas law clearly holds the discrepancy between the initial estimate and the appraisal award cannot be used as evidence of breach of contract. In *Breshears v. State Farm Lloyds*, the court held that "[Plaintiffs] may not use the fact that the appraisal award was different than the amount originally paid as evidence of breach of contract, especially when the contract they claim is being breached provides for resolution of disputes through appraisal."[98] Here, the language of the appraisal clause, as in *Breshears*, describes disagreement as to the amount of loss as a condition precedent to the appraisal process,[99] rendering the asserted discrepancy an immaterial fact issue for a breach of contract claim.

Plaintiffs' third argument that Defendants failed to timely investigate Plaintiffs' claim is based upon a misunderstanding of the insurance contract. The relevant contractual provision provides that "[w]ithin 15 days after we receive your *written notice* of claim, we must . . . begin

---

[95] Dkt. No. 29, at ¶ 15.
[96] *Id.*
[97] Dkt. No. 31-1, at ¶ 5; Dkt. No. 31-2.
[98] *Breshears v. State Farm Lloyds*, 155 S.W.3d 340, 343 (Tex. App.—Corpus Christi 2004, pet. denied).
[99] Dkt. No. 26-1, at p. 42 ¶ 4.

any investigation of the claim."[100] Plaintiffs allege State Farm violated this contractual provision because while the claim was reported on March 30, 2012, the home was not investigated until May 15, 2012.[101] However, Plaintiffs' argument fails because there is no evidence in the record showing Plaintiffs filed a *written notice*. Absent such evidence, the Court cannot find a violation of this contractual provision.

Next, under the terms of the contract, State Farm must pay "only the actual cash value at the time of the loss[.]"[102] Furthermore, the contract states that "when the repair or replacement is actually completed, [State Farm] will pay the covered additional amount [Plaintiffs] actually and necessarily spend to repair or replace the damaged part of the property[.]"[103] Moreover, the contract provides that in order to receive additional payments on a replacement cost basis, Plaintiffs must have completed the repairs to the property within two years from the date of loss.[104] Plaintiffs incorrectly argue that the date of loss is the date that State Farm paid the appraisal award. The correct date of loss in this case is March 29, 2012, the date of the wind and hail storm.[105] Thus, strictly adhering to the terms of the contract, the parties can no longer comply with this provision. However, when State Farm paid the appraisal award, it extended the time for Plaintiffs to complete repairs until October 31, 2015.[106] Indeed, contrary to the two year provision under the contract, State Farm afforded Plaintiffs more than three years from the original date of loss to recover replacement cost benefits.

The Court fails to see how State Farm is in breach of contract simply by extending the time period by which Plaintiffs must complete repairs in order to receive replacement cost

---

[100] Dkt. No. 26-1, at p. 44 ¶ 14 (emphasis added).
[101] Dkt. No. 29, at ¶ 12.
[102] Dkt. No. 26-1, at p. 20.
[103] *Id.*
[104] *Id.*
[105] Dkt. No. 1-2, at ¶ 16.
[106] Dkt. No. 26-9, at p. 3.

benefits. This extension of time inures to Plaintiffs' benefit alone. Therefore, the Court finds that the existence, timely payment, and acceptance of the binding and enforceable appraisal award estops Plaintiffs from asserting their breach of contract claim, and that summary judgment as to this claim is appropriate.

### c. Extra-Contractual Claims

Plaintiffs allege extra-contractual claims against State Farm for (1) committing violations of §§ 541 and 542 of the Texas Insurance Code; (2) engaging in fraud and conspiracy to commit fraud; and (3) breaching the common law duty of good faith and fair dealing. Additionally, Plaintiffs allege extra-contractual claims against Mr. Swett and Ms. Cramer for committing violations of § 541 of the Texas Insurance Code and engaging in fraud and conspiracy to commit fraud. The Court commences its analysis of these claims by recognizing the principle that "in most circumstances, an insured may not prevail on a bad faith claim without first showing that the insurer breached the contract."[107] The exceptions to this rule are the insurer's (1) failure to timely investigate the insured's claim or (2) commission of "some act, so extreme, that would cause injury independent of the policy claim."[108]

Defendants argue that Plaintiffs' claims against Ms. Cramer are not actionable because "she was not involved in the handling or adjustment of Plaintiffs' claim."[109] Regarding all claims generally, Defendants argue that Plaintiffs cannot maintain any extra-contractual causes of action because the amount of loss was determined by appraisal and State Farm timely tendered the appraisal award.[110] Moreover, Defendants contend that Plaintiffs cannot succeed on their extra-contractual claims because each cause of action is derivatively precluded by the appraisal and

---

[107] *Liberty Nat. Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 629 (Tex. 1996) (citing *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995); *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 17 (Tex. 1994).
[108] *Republic Ins. Co. v. Stoker*, 903 S.W.2d 10, 17 (Tex. 1995).
[109] Dkt. No. 26, at ¶ 2.
[110] Dkt. No. 26, at ¶ 10.

resultant estoppel on their breach of contract claim.[111] Defendants further argue Plaintiffs fail to allege facts that would give rise to an independent injury claim.[112]

### i. Bad Faith Claims

In Texas, the common-law bad faith standard for breach of the duty of good faith and fair dealing is imputed to statutory liability under the Texas Insurance Code; both extra-contractual claims share the same predicate for recovery, such that evidentiary insufficiency is equally dispositive.[113] Relevant to the disposition of this case, the Texas Supreme Court has held that an insured's bad faith claims must fail as a result of the Court's resolution of the breach of contract claim in the insurer's favor, unless the insured can demonstrate actions or omissions that caused an injury independent of those that would have resulted from the wrongful denial of the policy benefits.[114]

To the extent Plaintiffs even sufficiently alleged extra-contractual claims in their original petition, the bad-faith causes of action relate solely to State Farm's investigation and handling of Plaintiffs' policy claim.[115] Plaintiffs do not dispute that these claims extend beyond the coverage dispute. Thus, far from providing evidence creating a genuine issue of material fact on these claims, Plaintiffs have failed to even allege an action which would constitute an independent injury. Accordingly, the Court **GRANTS** summary judgment in Defendants' favor on Plaintiffs' common-law and statutory claims of bad faith.

---

[111] *Id.*

[112] *Id.*

[113] *See Emmert v. Progressive Cnty. Mut. Ins. Co.*, 882 S.W.2d 32, 36 (Tex. App.—Tyler 1994, writ denied); *Texas Mut. Ins. Co. v. Sara Care Child Care Ctr., Inc.*, 324 S.W.3d 305, 317 (Tex. App.—El Paso 2010, review denied) (citing *Progressive County Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 922–23 (Tex. 2005) (per curiam)).

[114] *Great Am. Ins. Co. v. AFS/IBEX Fin. Services, Inc.*, 612 F.3d 800, 808 n.1 (5th Cir. 2010) (citing *Parkans Int'l LLC v. Zurich Ins. Co.*, 299 F.3d 514, 519 (5th Cir. 2002)). *But see In re Deepwater Horizon*, 14-31321, 2015 WL 7421978, at *10 (5th Cir. Nov. 19, 2015), *certified question accepted* (Dec. 4, 2015) (certifying that question to the Supreme Court).

[115] Dkt. No. 1-2, at ¶¶ 74–75.

*ii. Prompt Payment of Claims*

Similarly, Plaintiffs brought a claim under § 542 of the Texas Insurance Code against State Farm for its alleged failure to timely pay Plaintiffs' claims.[116] In Texas, courts have constantly held that "full and timely payment of an appraisal award under the policy precludes an award of penalties under the Insurance Code's prompt payment provisions as a matter of law."[117] Here, it is undisputed that State Farm tendered payment pursuant to the appraisal clause.[118]

Additionally, as noted earlier, the record reflects that State Farm promptly responded to, and paid Plaintiffs' claim. Thus, because Plaintiffs have failed to allege an action which would constitute a violation independent of the now-resolved payment dispute, the Court **GRANTS** summary judgment in State Farm's favor on this claim as well.

*iii. Fraud & Conspiracy*

Lastly, Defendants pray that the Court dismiss all the remaining claims as a matter of law, as "they are derivative of Plaintiffs' defunct breach of contract claim."[119] To the extent these allegations even properly state a claim, Defendants have sufficiently showed the absence of a genuine issue of material fact by proffering evidence of proper completion of the appraisal process and tendering of payment. In contrast, Plaintiffs have failed to offer evidence to the contrary. As a result, the Court **GRANTS** summary judgment in favor of Defendants as to Plaintiffs' fraud and conspiracy claims.

---

[116] Dkt. No. 1-2, at ¶¶ 68–71.
[117] *In re Slavonic Mut. Fire Ins. Ass'n*, 308 S.W.3d 556, 563 (Tex. App.—Houston [14th Dist.] 2010, no pet. h.) (collecting cases), *overruled on other grounds, In re Cypress Texas Lloyds*, No. 14-11-00713-CV, 2011 WL 4366984, at *1 (Tex. App.—Houston [14th Dist.] Sept. 20, 2011, no pet. h.) (mem. op.).
[118] Dkt. No. 29, at ¶ 12 (Plaintiffs acknowledged payment after issuance of the appraisal award).
[119] Dkt. No. 26, at ¶ 10.

## V.    Holding

Due to State Farm's compliance with the appraisal provision, Plaintiffs are estopped from asserting a breach of contract claim as a matter of law. Plaintiffs' extra-contractual claims for breach of the duty of good faith and fair dealing, as well as statutory violations of the Texas Insurance Code, do not survive absent the breach of contract claim. Similarly, Plaintiffs' fraud and conspiracy claims are factually and legally unsupported. Accordingly, the Court finds summary judgment as to all claims is warranted. For the foregoing reasons, the Court **DENIES** Plaintiffs' motion to lift abatement, **GRANTS** Defendants' motion to lift abatement, and **GRANTS** the motion for summary judgment. Accordingly, Plaintiffs' claims are **DISMISSED WITH PREJUDICE.** A final judgment will issue separately.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 26th day of September, 2016.

_____
Micaela Alvarez
United States District Judge